UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SANDY LEE BAUMBACH,                    :
                                       :CIVIL ACTION NO. 3:15-CV-2375
          Plaintiff,                   :
                                       :(JUDGE CONABOY)
          v.                           :
                                       :
CAROLYN W. COLVIN,                     :
Acting Commissioner of                 :
Social Security,                       :
                                       :
          Defendant.                   :
                                       :

## MEMORANDUM

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Social Security Income ("SSI") under Title XVI.  (Doc. 1.)  She alleged disability beginning on March 30, 2012.  (R. 36.)  The Administrative Law Judge ("ALJ") who evaluated the claim, Patrick S. Cutter, concluded in his May 23, 2014, decision that Plaintiff's severe impairments of bronchitis and degenerative disc disease did not alone or in combination, including consideration of her nonsevere impairments (hypertension, a history of basal cell carcinoma status post surgeries, carpal tunnel syndrome, cubital tunnel syndrome, depression, and anxiety) meet or equal the listings.  (R. 38-42.) He also found that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain nonexertional limitations and that she was capable of performing jobs that existed in significant numbers in the national economy.  (R. 42-

47.)   ALJ Cutter therefore found Plaintiff was not disabled.   (R.
47.)

     With this action, Plaintiff asserts that the Acting
Commissioner's decision should be reversed or remanded for the
following reasons: 1) the ALJ unreasonably found that Plaintiff
could perform three jobs that each involved job duties inconsistent
with her RFC; 2) the ALJ unreasonably failed to consider the
combined impact of Plaintiff's conditions on her RFC; 3) the ALJ
unreasonably concluded that Plaintiff's condition of bilateral
cubital/carpal tunnel would resolve within twelve months; 4) the
ALJ's review of and deference to the medical opinions was
inconsistent with SSA regulations; and 5) the ALJ erred in finding
Plaintiff's mental impairments non-severe.   (Doc. 11 at 2.)   After
careful review of the record and the parties' filings, I conclude
this appeal is properly denied.

### I. Background

**A.   *Procedural Background***

     Plaintiff protectively filed for DIB and SSI on August 17,
2012.   (R. 36.)   The claims were initially denied on April 2, 2013,
and Plaintiff filed a request for a hearing before an ALJ on April
16, 2013.   (*Id.*)

     ALJ Cutter held a hearing on May 16, 2014.   (*Id.*)   Plaintiff,
who was represented by an attorney, testified as did Vocational
Expert ("VE") Paul A. Anderson.   (*Id.*)   As noted above, the ALJ

2

issued his unfavorable decision on May 23, 2014, finding that
Plaintiff was not disabled under the Social Security Act during the
relevant time period.  (R. 47.)

Plaintiff's request for review of the ALJ's decision was dated
June 13, 2014.  (R. 1.)  The Appeals Council denied Plaintiff's
request for review of the ALJ's decision on November 6, 2015.  (R.
1-5.)  In doing so, the ALJ's decision became the decision of the
Acting Commissioner.  (R. 1.)  In the denial, the Appeals Council
noted that it had reviewed new information submitted but it did not
affect the ALJ's decision because it was about a later time.  (R.
1-2.)  Plaintiff was advised that if she wanted consideration of
whether she was disabled after May 23, 2014, she would need to
submit a new application for benefits.  (R. 2.)

On December 11, 2015, Plaintiff filed her action in this Court
appealing the Acting Commissioner's decision.  (Doc. 1.)  Defendant
filed her answer and the Social Security Administration transcript
on February 19, 2016.  (Docs. 9, 10.)  Plaintiff filed her
supporting brief on March 24, 2016.  (Doc. 12.)  Defendant filed
her brief on April 18, 2016.  (Doc. 13.)  Plaintiff filed her reply
brief on April 28, 2016.  (Doc. 14.)  Therefore, this matter is
fully briefed and ripe for disposition.

**B.   *Factual Background***

Plaintiff was born on January 29, 1961, and has a limited
education.  (R. 46.)  She has past relevant work as a

3

cleaner/housekeeper and warehouse worker.  (R. 45.)

## 1.    Impairment Evidence

On June 1, 2011, Plaintiff was seen at the Milton S. Hershey Medical Center emergency department.  (R. 255.)  She presented with anxiety at the suggestion of a friend because Plaintiff had been agitated over the preceding several days. (*Id.*) Plaintiff said she had consumed several beers before going to the hospital.  (*Id.*) She reported her agitation was due to problems at home with her son, and she began cutting herself in a fit of anger. (*Id.*)  The abrasions on her left wrist were found to be very superficial. (*Id.*)  It was noted that Plaintiff had a past medical history significant for borderline personality disorder and hypertension, and she had not taken her hypertension medication in the preceding month because she did not have insurance.  (*Id.*)  Physical examination showed that Plaintiff was in mild distress secondary to being anxious, her blood pressure was 146/97, she had a cyst on the right side of her face, and superficial wrist lacerations.  (R. 256.)  After examination and discussion, Plaintiff was discharged home in good condition to follow up with the Social Work Department at Hershey.  (*Id.*)  The "Presumptive Diagnosis" was anxiety.  (*Id.*)

On May 17, 2012, Plaintiff was seen by her primary care doctor, William Albright III, M.D.  (R. 230-31.)  She presented with back pain, a lesion on her nose for which Mohs procedure was planned, and tobacco dependence.  (R. 230.)  Physical examination

4

showed Plaintiff was in moderate distress, she had a lesion on the right side of her nose, and lumbar spine tenderness. (R. 230-31.) Dr. Albright found that Plaintiff was oriented to time, place, person, and situation, and she demonstrated appropriate mood and affect. (R. 231.) He noted that Plaintiff was unable to work because of her back. (*Id.*)

In a Pre-Operative History and Physical Report dated October 10, 2012, high blood pressure, asthma, COPD and anxiety were noted. (R. 302.) Plaintiff denied problems in other areas reviewed including musculoskeletal problems and pack pain. (R. 302.) The Social History section of the report indicates that Plaintiff smoked cigarettes and drank a six-pack of alcohol daily. (*Id.*)

Plaintiff had Mohs surgery performed on October 9, 2012, for an advanced basal cell carcinoma of her right cheek and nose. (R. 305.) Fred G. Fedock, M.D., performed reconstructive surgery on October 10, 2012. (*Id.*)

Christine Daecher, D.O., performed a disability examination on November 15, 2012. (R. 265-70.) Plaintiff presented with back pain describing it in the lumbar spine and worsening over the preceding year or two although she had symptoms for thirty years. (R. 265.) Plaintiff described the pain as aching, chronic and constant but the symptoms waxed and waned, were alleviated by medications and position change, and were exacerbated by house cleaning and standing. (*Id.*) She reported that she sometimes had

trouble standing up and the pain radiated to her buttocks.  (*Id.*)
Plaintiff also presented with a cough which she described as
constant.  (*Id.*)  Pertinent medical conditions were noted to
include asthma with bronchitis; symptoms reportedly were alleviated
by inhaled medications.  (*Id.*)  In the Review of Systems, Plaintiff
complained of fever/chills, weakness, change of appetite, night
sweats, orthopnea, near-syncope/dizziness, dyspnea on exertion,
productive cough, restless legs, myalgias, muscle weakness, low
back pain, paresthesia, and anxiety.  (*Id.*)  In the Social History
section of the report, Dr. Daecher noted that Plaintiff reported
she never drinks alcohol but had a history of heavy consumption ten
years ago, she smoked a pack of cigarettes a day, and she was
unemployed, having been fired from her job as a housekeeper the
year before because she was sick a lot with bronchitis.  (R. 266.)
On physical examination Plaintiff's general appearance showed she
was overall well developed and in no acute distress but she had
surgical facial scars with sutures and swelling; respiratory
auscultation showed "diffuse: diminished" and expiratory wheezes;
respiratory effort/rhythm showed "overall: no retractions" and
"rate: tachypnea - only slight"; musculoskeletal examination of the
upper and lower extremities was benign, she had a "positive
straight leg raising test with each leg although she can lift each
leg very high, Waddell's signs--all 5 negative, full flexion,
decreased extension and full rotation," normal range of motion in

6

both hips, and normal gait; neurological exam was normal and Plaintiff's mental status overall was alert and oriented; and psychiatric examination showed Plaintiff had normal mood and affect with normal quality speech and no aphasia.  (R. 267-69.)  Dr. Daecher offered the following diagnoses:

> CHRONIC BRONCHITIS NOS (Are pulmonary exam is with a slight increase in her respiratory rate, and diminished breath sounds with wheezes at the bases.  Her pulse oxygenation level was normal and did not decrease with the amount of activity of range of motion testing.  The records were not helpful and did not discuss her breathing or bronchitis, she most likely has chronic bronchitis type of COPD or asthma.  Pulmonary function tests can further evaluate what the exact problem is with her breathing.  Asthma does cause coughing and mucus production and can mimic bronchitis.  Smoking cessation is highly recommended and again your office may consider getting pulmonary function tests.  She will likely continue to have a chronic cough mucus production.)

> LUMBAGO (With her back exam she has good posture and full range of motion.  She does have complaints of low back pain with straight leg testing although she can [lift] with both of her legs very high.  She has normal reflex and is able to perform simple activities such as squatting, [toe and heel] walking, getting up and down from chairs and the exam table without difficulty.  Records that were included with her case were not very helpful and mostly discussed her recent facial surgery.  She will be getting an x-ray of her low back.  It is noted that she has had minimal medical treatments for her low back pain.  She likely has . . . occupation appropriate spinal arthritis, which is certainly expected with warehouse work. . . .

> BENIGN HYPERTENSION (The blood pressure is

7

> only slightly elevated today and this will
> not cause symptoms.  She is clear that her
> blood pressure is not one of the reasons she
> applied for disability and just something in
> her medical history.)

(R. 269.)

On December 19, 2012, Louis Laguna, Ph.D., performed a Mental Status Evaluation for the Bureau of Disability Determination.  (R. 318-22.)  Plaintiff reported that she last worked in January of 2012 when she was a housekeeper at Best Western for about three months.  (R. 318.)  She said she had been fired for using too many sick days which she attributed to her chronic bronchitis.  (*Id.*) Plaintiff told Dr. Laguna that she applied for disability due to a number of physical problems including pain in her back and legs as well as high blood pressure.  (R. 319.)  Plaintiff added that she had a history of anxiety.  (*Id.*)  Plaintiff said that she had applied for numerous jobs over the past year but no potential employer had returned her call and she suspected that recent efforts had failed because of her facial scarring.  (*Id.*) Plaintiff reported that she had never been hospitalized psychiatrically and she did not take psychotropic medications. (*Id.*)  She further reported that about two years earlier she experienced anxiety and her physician prescribed Lorazapam on an as needed basis but she had not taken the medication in about two years.  (*Id.*)  In the Social and Family History portion of the evaluation, Dr. Laguna recorded that Plaintiff completed eighth

8

grade but became pregnant before entering ninth grade and quit
school to have her child. (R. 320.) Plaintiff was married briefly
to the father of the child, and she later had three more children,
working part-time off and on. (*Id.*) At the time of the
evaluation, Plaintiff was sharing a house with a niece and they
were looking for a roommate to help defer costs. (*Id.*) Plaintiff
also said over the preceding few months she had been spending time
at home and trying to apply for jobs. (*Id.*) Mental Status
evaluation indicates that Plaintiff presented as an individual with
average self-esteem; she endorsed some mild symptoms related to
depression including limited appetite, frustration, and periodic
sadness about her cancer diagnosis. (*Id.*) Dr. Laguna found that
Plaintiff's thought processes, productivity, continuity, and
language were all intact, she was able to think abstractly, her
memory (recent, recent past, and remote) were well intact, she
denied problems with impulse control, and her insight and judgment
appeared to be good. (R. 321.) Dr. Laguna diagnosed adjustment
disorder with mixed emotions and dysthymic disorder. (*Id.*) He
also assessed a GAF of 50. (*Id.*) Regarding activities of daily
living, Dr. Laguna noted that Plaintiff was able to cook, clean,
shop, and take care of her own personal needs as well as manage
funds competently. (*Id.*)

On January 14, 2013, Plaintiff had x-rays of the lumbar spine
which showed mild to moderate disc space narrowing at L4-L5 and

mild at L5-S1 with no evidence of acute fracture or subluxation, no loss of vertebral body height, facet joints and SI joints normal, no evidence of spondylolisthesis or spondylolysis, and pedicles intact.  (R. 323.)  Impression was degenerative changes at L4-L5 and L5-S1 without acute osseous abnormality of the lumbar spine. (*Id.*)

On January 23, 2013, Plaintiff saw William Albright, IV, because of a cough and congestion.  (R. 328-40.)  Physical examination showed mild diffuse wheezing and normal respiratory effort.  (R. 329.)  Psychiatrically Plaintiff was oriented to time, place, person, and situation, and she demonstrated appropriate mood and affect.  (*Id.*)  Dr. Albright assessed acute bronchitis and hypertension, benign.  (R. 330.)  He noted that Plaintiff needed to take her blood pressure medicine because her pressure was up, he would add flovent and amoxicillin to her other medications, Plaintiff needed to stop smoking, and she had to keep the heat on in her house.  (*Id.*)

Plaintiff again saw Dr. Daecher on March 27, 2013, for a disability examination.  (R. 342-49.)  Dr. Daecher noted that Plaintiff's history from her November 2012 visit was unchanged. (R. 344.)  She also noted that Plaintiff was a "no-show" for a follow up appointment in which she was to get a prescription to get spirometry.  (*Id.*)  Dr. Daecher explained the reason for the second disability examination:  "Due to the period of time being over

three months from her initial evaluation, disability office is requested [sic] a full physical again. She has reviewed her prior intake and has not changed anything in it." (*Id.*) Physical examination was much the same as the previous visit but clubbing was present in Plaintiff's fingers. (R. 346.) Diagnoses were also much the same but Dr. Daecher noted that Plaintiff had significantly noisy respirations and she would be getting spirometry at Hershey; she did not complain of low back pain with straight leg testing; she had slightly abnormal reflexes at the left lower extremity but continued to be able to perform simple activities such as squatting, toe and heel walking, and getting up and down from chairs and the exam table without difficulty. (R. 348.) Dr. Daecher added that Plaintiff had minimal medical treatments for her low back pain, nothing had changed in her history regarding her low back pain since her November evaluation, previous x-ray showed mild to moderate degeneration at the lower lumbar vertebrae, this was expected to be unchanged, Plaintiff did not appear to be in significant pain at the time of the visit, and she would likely continue to have indolent low back pain. (*Id.*)

On April 1, 2013, Plaintiff had spirometry which showed a moderately severe obstructive ventilatory defect and a significant response to bronchodilator was observed; there was a mild reduction in FVC, possibly due to obstruction or restriction. (R. 359.)

In April 2014, Plaintiff was diagnosed with bilateral carpal

11

tunnel syndrome by Theodore T. Foley, M.D.  (R. 391-94.)  He
scheduled Plaintiff for surgical treatment of the condition.  (R.
393.)  By history, Dr. Foley noted that Plaintiff reported she was
unable to work partially related to the neuropathy of her hands,
including numbness and tingling problems.  (R. 391.)   Physical
examination showed normal respiratory effort with lungs equal and
clear bilaterally; musculoskeletal examination showed normal range
of motion, and no tenderness, decreased strength, or gait problems;
psychiatrically Plaintiff's affect was grossly normal with good eye
contact.  (*Id.*)  Dr. Foley performed an extensive hand examination
and his Impression was Carpal Tunnel syndrome of bilateral hands
and Cubital Tunnel syndrome of bilateral elbows.  (R. 392-93.)  Dr.
Foley discussed surgery with Plaintiff and indicated without
elaboration that "some feeling will not return."  (R. 393.)
Plaintiff provided verbal consent to go forward with the
recommended surgeries.  (*Id.*)

## 2. **Opinion Evidence**

On May 17, 2012, Dr. Albrigt noted "continue rx unable to work
because of back pain" and assessed Plaintiff unable to work because
of her back.  (R. 230-31.)

*On October 1, 2012*, Dr. Albright completed a Pennsylvania
Department of Public Welfare form indicating that Plaintiff had
been permanently disabled beginning in 2010 with the primary
diagnosis of hypertension and the secondary diagnosis of chronic

12

back pain.  (R. 261, 355.)  He identified physical examination,
review of medical records, and clinical history as the bases for
the assessment.  (*Id.*)

An undated Pennsylvania Department of Public Welfare form
indicates Dr. Fred Fedok opined that Plaintiff was temporarily
disabled beginning on September 17, 2012, due to basal cell
carcinoma and the disability was expected to last until November
17, 2012.  (R. 353.)

On November 15, 2012, Dr. Daecher completed a Medical Source
Statement of Claimant's Ability to Perform Work-Related Activities
and found the following: Plaintiff could frequently lift and carry
two to three pounds and occasionally lift and carry ten to twenty
pounds; she could stand and walk for four to five hours in an
eight-hour day and sit for eight hours with alternating sit/stand
at her option; Plaintiff was unlimited in her ability to push and
pull; She could occasionally bend, kneel, stoop, crouch, balance,
and climb; she had no limitation in other physical functions; and
she had environmental restrictions regarding poor ventilation,
temperature extremes, dust, fumes, odors, and gases.  (R. 271-72.)

In addition to the evaluation set out above, Dr. Laguna
completed a medical source statement concerning Plaintiff's ability
to do work related activities on November 19, 2012.  (R. 315-16.)
He opined that Plaintiff was not limited in her ability to
understand, remember, and carry out instructions, or in her ability

13

to respond appropriately to supervision, co-workers, and work pressures in a work setting.  (R. 315.)  He did not find that any other abilities were affected by her mental impairment.  (R. 316.)

On January 2, 2013, State agency psychological consultant, Peter Garito, concluded that Plaintiff's impairment of Affective Disorders was nonsevere.  (R. 82.)  He completed a Psychiatric Review Technique ("PRT") and concluded that Plaintiff had mild restrictions in her activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation, each of extended duration.  (*Id.*)  Explaining his findings, Dr. Garito stated that Plaintiff was not in treatment for any mental problem at the time and she was not taking any psychotropic medication.  (*Id.*)  He also noted that the recent consultative exam found no significant deficits in mental status, Plaintiff was independent, had been looking for work, and she reported few functional limitations.  (*Id.*)

On March 27, 2013, Dr. Daecher completed another Medical Source Statement.  (R. 336-41.)  She found the following limitations would be expected to last for more than twelve consecutive months: Plaintiff could occasionally lift and carry eleven to twenty pounds; without interruption Plaintiff could sit for eight hours, stand for five hours, and walk for one hour; in an eight-hour day, Plaintiff could sit for a total of eight hours,

14

stand for a total of five hours, and walk for a total of four hours; Plaintiff could frequently use her hands for reaching and continuously for handling, fingering, feeling, pushing, and pulling (limitations attributed to Plaintiff's breathing); Plaintiff could continuously operate foot controls; due to breathing problems she was limited to occasionally climbing, stooping, kneeling, crouching, and crawling, and frequently balancing; Plaintiff could occasionally be exposed to unprotected heights, humidity and wetness, extreme cold and heat, and vibrations; she could never be exposed to dust, odors, fumes, and pulmonary irritants; she could frequently be exposed to moving mechanical parts and operating a motor vehicle; and she could continually be exposed to very loud noise with hearing protection.  (R. 336-41.)  Dr. Daecher found that Plaintiff could perform all other listed physical activities. (R. 341.)

On April 2, 2013, a State agency medical consultant, Vrajlal Popat, M.D., concluded that Plaintiff was capable of performing light work.  (R. 86.)  He opined that Plaintiff could occasionally lift and/or carry twenty pounds and frequently ten pounds; she could stand and/or walk about six hours in an eight-hour day and sit for the same amount of time; Plaintiff's ability to push and/or pull was unlimited; and she had no postural, manipulative, visual, communicative, or environmental limitations.  (R. 84.)

On March 20, 2014, Dr. Albright sent a letter to Plaintiff's

15

attorney in which he stated that "Sandy has been under my care for chronic back pain and has been unable to work.  Sandy has now developed bilateral carpal tunnel syndrome, verified by an EMG. Sandy is unable to perform sedentary work due to her medical conditions and is unable to use her hands for any length of time." (R. 388.)

### 3.   **Function Report and Hearing Testimony**

In her October 1, 2012, Function Report, Plaintiff described her daily activities as follows: she gets up and has a cigarette, checks to see if the house needs to be cleaned and, if not, she takes a nap, gets up and makes a TV dinner, then goes back to bed. (R. 202.)  Plaintiff said she does not often shop, do laundry, or do other chores, and she likes being alone though she spends time with her roommate.  (R. 202-05.)  Plaintiff also stated that she does not lift heavy things and she gets out of breath when she walks up and down stairs.  (R. 206.)

Plaintiff testified that she had not worked for three years though she put in applications.  (R. 57.)

At the time of the hearing Plaintiff was taking Vicodin, Tramadol, and Flexeril as well as using two different inhalers-- Flovent and Ventolin.  (R. 58.)  She reported that her medications helped but Vicodin made her feel "loopy or amused."  (R. 59.)

Plaintiff also testified that she had back pain all day every day, she had trouble standing up if she sat for too long, and the

16

pain was aggravated by vacuuming and climbing stairs.  (*Id.*)  She said she never used a TENs unit and she had not had physical therapy.  (*Id.*)

Regarding bronchitis, Plaintiff said it "kicks up" with hot weather and when she reduced her smoking.  (R. 60.)  She stated that she was continuing to try to quit smoking.  (*Id.*)  Plaintiff said she took medication for high blood pressure and it goes up if she does not take the pills.  (R. 61.)  Plaintiff also said she was scheduled for surgery for her carpal tunnel syndrome on the left arm on June 4, 2014, and, in the meantime, she was taking Vicodin for the pain which helped a bit; surgery on the right arm would follow.  (*Id.*)

Plaintiff testified that she had started taking Cymbalta for depression and it "actually works" and Lorazepam helps with anxiety.  (R. 62-63.)  Plaintiff said she did not go to therapy or counseling.  (R. 62.)

ALJ Cutter asked VE Anderson to consider a hypothetical individual of the same education profile as Plaintiff who has the RFC to perform light work subject to the following limitations:

> The individual can sit up to eight hours per day.  Stand up to five hours per day.  Walk up to four hours per day.  Can frequently reach including overhead, bilaterally.  Only frequently balance.  Only occasionally climb, stoop, kneel, and crouch, or crawl.  There should be only occasional exposure to wetness, humidity, temperature extremes, or vibrations.  There's a need to avoid dust, gasses, fumes, or other pulmonary irritants.

17

> The individual should only have frequent
> exposure to moving parts or operating a motor
> vehicle.  There should be no constant use of
> the hands.  The work should involve routine,
> repetitive, one to two step tasks.  Only
> occasional changes.  Occasional decision
> making.  Only occasional interaction with the
> public, co-workers, or supervisors, and the
> work should not involve any fast paced
> production quotas.

(R. 70-71.)  VE Anderson testified that this hypothetical individual could not perform Plaintiff's past relevant work but there were unskilled jobs in the national economy the individual could perform including bakery worker, potato chip sorter, and stuffer.  (R. 71.)

Plaintiff's attorney asked VE Anderson if those exemplary jobs would require standing for the majority of the work day. (R. 72.) He responded that standing and walking would be the majority of the time--seven of eight hours--and the jobs would exist in reduced numbers for some sitting primarily.  (R. 72-73.)  VE Anderson responded in the affirmative when asked if all three positions would require bilateral hand use.  (R. 73-74.)

## 4. **ALJ Decision**

As noted above, ALJ Cutter issued his decision on May 23, 2014.  (R. 36-47.)  He made the following Findings of Fact and Conclusions of Law:

> 1.  The claimant meets the insured status
>     requirements of the Social Security Act
>     through December 31, 2016.
>
> 2.  The claimant has not engaged in

18

substantial gainful activity since March 30, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: bronchitis and degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can sit 8 hours a day, stand 5 hours a day and walk 4 hours a day, frequently reach including overhead bilaterally and frequently balance.  The claimant can occasionally climb, stoop, kneel, crouch and crawl, can tolerate occasional exposure to wetness, humidity, vibration and temperature extremes, and needs to avoid dust, gases, fumes, pulmonary irritants.  The claimant can tolerate frequent exposure to moving parts or operating a motor vehicle, and needs to avoid constant use of hands.  The claimant retains the mental capacity for routine, repetitive 1-2 step tasks with occasional changes and decision-making, occasional interaction with public, coworkers and supervisors and no fast-paced production work.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on January 29,

19

> 1961 and was 51 years old, which is
> defined as an individual closely
> approaching advanced age, on the alleged
> disability onset date (20 CFR 404.1563
> and 416.963).
>
> 8. The claimant has a limited education and
> is able to communicate in English (20
> CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not an
> issue in this case because the
> claimant's past relevant work is
> unskilled (20 CFR 404.1568 and 416.968).
>
> 10. Considering the claimant's age,
> education, work experience, and residual
> functional capacity, there are jobs that
> exist in significant numbers in the
> national economy that the claimant can
> perform (20 CFR 404.1569, 404.1569(a)
> 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a
> disability, as defined in the Social
> Security Act, from March 30, 2012,
> through the date of this decision (20
> CFR 404.1520(g) and 416.920(g)).

(R. 38-47.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to
determine whether a claimant is disabled.[1]   It is necessary for the

---

[1]   "Disability" is defined as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for
a continuous period of not less than 12 months . . . ."   42 U.S.C.
§ 423(d)(1)(A).   The Act further provides that an individual is
disabled

> only if his physical or mental impairment or
> impairments are of such severity that he is not

20

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record.  20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process.  *Id.*

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate

only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

21

that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy.  (R. 46-47.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality

22

> test if the Secretary ignores, or fails to
> resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it
> is overwhelmed by other evidence--
> particularly certain types of evidence (e.g.,
> that offered by treating physicians)--or if
> it really constitutes not evidence but mere
> conclusion.  *See* [*Cotter*, 642 F.2d] at 706
> ("'Substantial evidence' can only be
> considered as supporting evidence in
> relationship to all the other evidence in the
> record.") (footnote omitted).  The search for
> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely
> deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."  *Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an

exhaustive discussion of all the evidence. *See, e.g., Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Comm'f of Soc. Sec.*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless. *See, e.g., Albury v. Comm'r*

*of Soc. Sec.*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review."). An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

Plaintiff asserts that the Acting Commissioner's decision should be reversed or remanded for the following reasons: 1) the ALJ unreasonably found that Plaintiff could perform three jobs that each involved job duties inconsistent with her RFC; 2) the ALJ unreasonably failed to consider the combined impact of Plaintiff's conditions on her RFC; 3) the ALJ unreasonably concluded that Plaintiff's condition of bilateral cubital/carpal tunnel would resolve within twelve months; 4) the ALJ's review of and deference to the medical opinions was inconsistent with SSA regulations; and 5) the ALJ erred in finding Plaintiff's mental impairments nonsevere. (Doc. 11 at 2.) I will consider these claimed errors as they arise in the sequential evaluation process.

### A.   *Step Two Error*

### 1.   Mental Impairments

Plaintiff asserts the ALJ erroneously concluded that her mental impairments of depression and anxiety were nonsevere (Doc.

25

11 at 14-15), a determination made at step two of the sequential evaluation process.  Defendant contends that ALJ Cutter's step two analysis is supported by substantial evidence.  Doc. 13 at 4-9.)  I conclude Plaintiff has not shown that this claimed error is cause for reversal or remand because, even if credited, the error would be harmless.

If the sequential evaluation process continues beyond step two, a finding of "nonsevere" regarding a specific impairment at step two may be deemed harmless if the functional limitations associated with the impairment are accounted for in the RFC. *Salles v. Commissioner of Social Security*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (not precedential) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).  In other words, because the outcome of a case depends on the demonstration of functional limitations rather than a diagnosis, where an ALJ identifies at least one severe impairment and ultimately properly characterizes a claimant's symptoms and functional limitations, the failure to identify a condition as severe is deemed harmless error. *Garcia v. Commissioner of Social Security*, 587 F. App'x 367, 370 (9th Cir. 2014) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)); *Walker v. Barnhart*, 172 F. App'x 423, 426 (3d Cir. 2006) (not precedential) ("Mere presence of a disease or impairment is not enough[;] a claimant must show that his disease or impairment caused functional limitations that precluded him from engaging in

26

any substantial gainful activity.*");* *Burnside v. Colvin*, Civ. A. No. 3:13-CV-2554, 2015 WL 268791, at *13 (M.D. Pa. Jan. 21, 2015); *Lambert v. Astrue*, Civ. A. No. 08-657, 2009 WL 425603, at *13 (W.D. Pa. Feb. 19, 2009).

In support of this claimed error, Plaintiff first criticizes ALJ Cutter's consideration of Dr. Laguna's opinion, asserting that the limited weight assigned the GAF score of 50 is inherently inconsistent with the great weight attributed to the opinion that Plaintiff did not have work restrictions, and, therefore, the opinion should have been entirely disregarded.  (Doc. 11 at 14.) Plaintiff points to no authority prohibiting an ALJ from assigning different weights to various aspects of a single opinion when the ALJ presents a sufficient analysis for doing so and that analysis is supported by substantial evidence.

In rejecting the plaintiff's argument that the ALJ could not decline to adopt any of the particular findings made by a medical source whose opinion she had accorded great weight without an explanation, the Third Circuit Court of Appeals noted that a medical opinion need not be adopted wholesale when an ALJ has found it to be overall persuasive.  *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) (not precedential) ("No rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight.").

As noted by Plaintiff, ALJ Cutter acknowledged inconsistency in Dr. Laguna's opinion. (*Id.* (citing R. 45).)  The ALJ explained why he attributed little weight to the GAF score and great weight to Dr. Laguna's functional assessment. (R. 45.)  A review of Dr. Laguna's evaluation and medical source statement (R. 315-22) supports the ALJ's conclusion--Dr. Laguna's narrative, including Plaintiff's own assessment of her mental status at the time of the evaluation, shows that substantial evidence supports the ALJ's decision to discount the assigned GAF score of 50 which indicates significant impairment. (*See* Doc. 11 at 14 n.6.)  For example, Plaintiff did not say she applied for disability based on any mental health problem; rather, she pointed to several physical problems, stated that she had applied for a number of jobs and believed that her recent efforts had failed due to facial scarring, verified that she did not see a mental health professional or take psychotropic drugs, and explained that she had experienced anxiety two years before and was medicated then on an as needed basis. (R. 319.)  Because the anecdotal narrative supports the lack of restrictions to which the ALJ assigned great weight and the limited weight assigned the GAF score, the error alleged on the basis of inconsistency is without merit.

Further, Plaintiff primarily offers only conclusory assertions in support of the claimed error. A statement that Plaintiff's testimony and medical records show she is severely limited by her

mental impairments, without citation to the record, is insufficient to show error. (*See* Doc. 11 at 15.)  Plaintiff's citation to her visit to the emergency room at Hershey Medical Center (*id.* (citing R. 255)) does not provide support in that the single episode took place on June 1, 2011, almost one year before the March 30, 2012, alleged disability onset date.  This is especially so given Plaintiff's December 19, 2012, report to Dr. Laguna regarding her anxiety and related treatment.  (R. 319.)  Additionally, Plaintiff points to her testimony that "her mental impairments cause her to mope around the house."  (Doc. 11 at 15 (citing R. 66).)  While Plaintiff's cited subjective evidence might be considered supportive of a mental health impairment, the single citation does not suggest that the impairment was severe or show that the ALJ's conclusion is not based on substantial evidence.

The argument Plaintiff makes in her reply brief (Doc. 14 at 7), is similarly unavailing.  Plaintiff states that her "depression and anxiety render her unable to be on task the majority of the day.  (R. 66.)  This time off task, especially combined with her time off work due to her other conditions, make it impossible for her to hold a real world job."  (*Id.*)  When asked to describe a bad day when she was depressed, Plaintiff said "I mope around the house, I sit, and cry, think."  (R. 66.)  In the context of other evidence of record, Plaintiff's description of a bad day does not equate with evidence that her "depression and anxiety render her

unable to be on task the majority of the day," i.e., it is not evidence sufficient to undermine the ALJ's well-supported and well-reasoned determination that Plaintiff's mental impairment was nonsevere, nor is it evidence that the ALJ improperly considered her mental impairment in his RFC. (*See* R. 39-41, 45.)   Thus, Plaintiff has not shown that the ALJ's consideration of her mental health impairment is cause for reversal or remand.

## 2.   **Bilateral Cubital and Carpal Tunnel Syndromes**

Plaintiff contends that ALJ Cutter erroneously concluded that her bilateral cubital and carpal tunnel syndromes would resolve within twelve months.   (Doc. 11 at 7-9.)   I conclude Plaintiff has not shown that this claimed error is cause for reversal or remand.

At the outset, I note that Plaintiff's statement that "there is not a single piece of medical evidence in the record to support . . . a finding" that these conditions would resolve within twelve months (Doc. 11 at 7) misplaces the burden and regulatory requirements.   It is the claimant's burden to show the existence of an impairment "which has lasted or is expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).

Plaintiff cites the record extensively, pointing mostly to subjective testimony regarding her limitations related to bilateral cubital and carpal tunnel syndromes.   (Doc. 11 at 7-8.)   The only other evidence cited by Plaintiff is dated March and April of 2014,

i.e., just a little over two months before the ALJ's decision: Dr. Albright's letter indicating Plaintiff "is unable to use her hands" is dated March 20, 2014 (R. 388), and Dr. Foley's office note with the Impression "Carpal tunnel syndrome of bilateral hands[;] Cubital Tunnel syndrome of bilateral elbows," and his Plan which laid out Plaintiff's need for surgery (including the pathology notation "some feeling will not return") is dated April 15, 2014 (R. 393). ALJ Cutter correctly noted that the only evidence of record showing that Plaintiff was examined for the related complaints was Dr. Foley's April 2014 examination. (R. 40.) ALJ Cutter also correctly noted that Plaintiff was scheduled for surgery in June 2014. (*Id.*) Given this timeline and the fact that there is no indication that post-surgical conditions would cause any functional limitations affecting Plaintiff's ability to engage in substantial gainful activity lasting for the required duration, Plaintiff has not shown that ALJ Cutter erred on the basis alleged.

**B.    *Impairments Considered in Combination***

Plaintiff states the ALJ failed to consider the combined impact of her impairments. (Doc. 11 at 4-7.) Defendant maintains the ALJ's step three determination was consistent with relevant legal authority. (Doc. 13 at 9-10.) Plaintiff replies that the ALJ only gave "lip service" to her impairments in combination at step three and did not consider her impairments in combination thereafter, as he was required to do; her "real argument is that

ALJ Cutter failed to consider Ms. Baumbach's impairments in combination at step 4 when determining her RFC.  ALJ Cutter never even indicated that he did so."  (Doc. 14 at 5.)  I conclude Plaintiff has not shown that the claimed error is cause for reversal or remand.

Plaintiff's citations to the record related to her argument on this issue do not provide the suggested support in that Plaintiff does not show that the evidence cited by ALJ Cutter is inaccurate or insufficient.  (R. 4-7.)  In averring that the combination of her conditions renders her unable to work, Plaintiff points to the combination of bronchitis, surgeries for bilateral carpal tunnel and cubital tunnel and basal cell carcinoma, degenerative disc disease, depression, and side effects from her prescription medications.  (Doc. 11 at 5-6.)  First, Plaintiff's "surgeries for bilateral carpal tunnel and cubital tunnel and for her basal cell carcinoma," are not indicative of impairments which had lasted or were expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d)(1)(A).  Thus, even if Plaintiff were temporarily unable to work because of the surgeries or symptoms related to the conditions that were expected to be largely corrected with surgery, Plaintiff does not point to evidence which shows that the conditions related to the surgery had lasted or were expected to last for the required duration when the ALJ rendered his decision in May 2014.  Nor does Plaintiff argue that the

32

surgeries themselves, alone or in combination, would cause functional limitations satisfying the statutory durational requirement.  Pointing to Dr. Foley's notation that "'some feeling will not return'" under the Pathology section of his notes, Plaintiff states that Dr. Foley "never indicated that he expects Ms. Baumbach to fully recover from her condition or an expected date for that recovery, but rather, his notes reflect that a full recovery is not possible."  (Doc. 11 at 8 (quoting R. 393).) Without more, Dr. Foley's notation does not satisfy Plaintiff's burden of showing that she will have a post-surgical residual problem that will result in a functional limitation affecting her ability to engage in substantial gainful activity.  Thus, any failure to include limitations associated with these surgeries or the underlying conditions does not support a claim of error.

Regarding allegations related to the combination of bronchitis, degenerative disc disease, depression, and side effects from her prescription medications, Plaintiff's citations to the record refer only to her testimony and subjective reporting (Doc. 11 at 5-6); she does not directly refute the evidence relied upon by ALJ Cutter or cite contradictory objective evidence of record. In both his step two analysis and RFC discussion, ALJ Cutter cited ample evidence of record to support his conclusion that Plaintiff's subjective complaints were not entirely credible.  (R. 39-41, 42-45.)  Because it is only *credibly established* limitations which

33

must be considered by the ALJ, *Rutherford*, 399 F.3d at 554,

Plaintiff must do more than point to her subjective complaints to

show that ALJ Cutter's determinations are not based on substantial

evidence.  Because she has not done so, this claimed error is not

cause for reversal or remand.

### C.    *Medical Opinions of Record*

Plaintiff contends that the ALJ did not comply with relevant

regulations regarding the evaluation of medical opinions in that he

did not consider the opinion of a DPW consultant who found

Plaintiff totally disabled as of 2010, he did not give Dr.

Albright's opinion substantial or controlling weight, and he did

not appropriately evaluate Dr. Daecher's opinions.  (Doc. 11 at 9-

14.)

### 1.    **Department of Public Welfare Consultant**

Plaintiff first asserts that ALJ Cutter erred by completely

ignoring the evidence from the Department of Public Welfare ("DPW")

that she was permanently disabled as of 2010 due to her

hypertension and back pain which, in combination with the DPW

medical consultant's opinion that she was "totally disabled" due to

cancer alone from September 17, 2012, to November 17, 2012, shows

that her combined conditions render her totally disabled.  (Doc. 11

at 9 (citing R. 353, 355).)   I conclude that this claimed error is

not cause for reversal or remand.

A review of the cited material indicates that a DPW form

34

signed by Dr. Fedock states that Plaintiff was "temporarily disabled" due to her basal cell carcinoma and facial defect from September 17, 2012, to November 17, 2012. (R. 353.) Contrary to Plaintiff's assertion, this opinion does nothing to support ongoing disability due to her combined conditions: Dr. Fedock expected her *temporary* disability related to her cancer to *end* two months after it began. (R. 353.)

Plaintiff is also mistaken that ALJ Cutter "completely ignored" DPW evidence that she was disabled beginning in 2010 due to hypertension and back pain. (Doc. 11 at 9.) The evidence cited shows that Dr. Albright signed the DPW form on October 1, 2012, identifying 2010 as the start date of Plaintiff's permanent disability. (R. 355.) As set out in the Factual Background section of this Memorandum, the October 1, 2012, form signed by Dr. Albright is found twice in the record, at record pages 261 and 355. *See supra* pp. 12-13. Record page 261 is page 4 of Exhibit B3F, which was cited by ALJ Cutter in his review of opinion evidence authored by Dr. Albright. (R. 44.) Thus, Plaintiff is mistaken that the ALJ ignored the DPW evidence, and this claimed basis of error is without merit. Further, the evidence does not support permanent disability for several reasons. First, form evidence is "weak evidence at best." *Drejka v. Comm'r of Soc. Sec.*, 61 F. App'x 778, 782 (3d Cir. 2003) (not precedential) (where treating physician made determination that the plaintiff was disabled only

in a form report, the Third Circuit Court has characterized such a form report, "in which the physician's only obligation was to fill in the blanks, as 'weak evidence at best.'"). Second, Dr. Albright's opinion that Plaintiff was totally disabled beginning in 2010 (R. 261, 355) is undermined by the fact that he assessed the onset of Plaintiff's disability to precede her alleged onset date by over one year. Third, Dr. Albright asserted that Plaintiff's primary diagnosis was hypertension and the secondary diagnosis was chronic back pain (R. 261, 355), but Plaintiff herself stated that her hypertension was not one of the reasons she applied for disability, it was "just something in her medical history" (R. 269). Fourth, Plaintiff told Dr. Laguna and Dr. Daecher that she was fired from her last job in January 2012 because she missed too many days due to her bronchitis--she did not mention that either hypertension or back problems interfered with her ability to do the housekeeping job. (R. 266, 318.) Thus, Plaintiff herself did not believe she was disabled as of 2010 on the bases identified by Dr. Albright. For all of these reasons, Dr. Albright's opinion expressed in the DPW form does not provide support for Plaintiff's claim of permanent disability. ALJ Cutter neither ignored it nor improperly assessed it and Plaintiff's claimed error related to this opinion is not cause for reversal or remand.

2. **Treating Physician's Opinion**

Plaintiff next argues that the ALJ did not properly consider

Dr. Albright's March 30, 2014, opinion that Plaintiff was
permanently disabled.  (Doc. 11 at 10 (citing R. 388).)  Defendant
responds that ALJ Cutter properly evaluated Dr. Albright's
opinions. (Doc. 13 at 10-14.)  I conclude Plaintiff has not shown
that this claimed error is cause for reversal or remand.

Under applicable regulations and the law of the Third Circuit,
a treating medical source's opinions are generally entitled to
controlling weight, or at least substantial weight.  *See*, *e.g.*,
*Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20
C.F.R. § 404.1527(c)(2); *Cotter v. Harris*, 642 F.2d 700, 704 (3d
Cir. 1981)).  Sometimes called the "treating physician rule," the
principle is codified at 20 C.F.R. 404.1527(c)(2), and is widely
accepted in the Third Circuit.  *Mason v. Shalala*, 994 F.2d 1058 (3d
Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986).
The regulation addresses the weight to be given a treating source's
opinion: "If we find that a treating source's opinion on the
issue(s) of the nature and severity of your impairment(s) is well-
supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other
substantial evidence in your case, we will give it controlling
weight."  20 C.F.R. § 404.1527(c)(2).[2]  "A cardinal principle

---

[2] 20 C.F.R. § 404.1527(c)(2) states in relevant part:

> Generally, we give more weight to opinions from
> your treating sources, since these sources are

guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted); see also *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of

> likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).

The Court of Appeals for the Third Circuit addressed a plaintiff's argument that an ALJ failed to give controlling weight to the opinion of a treating physician in *Horst v. Commissioner of Social Security*, 551 F. App'x 41, 46 (3d Cir. 2014) (not precedential).

> "Under applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). Controlling weight is given when a treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." *Fargnoli*, 247 F.3d at 43.

551 F. App'x at 46. *Horst* noted that neither the ALJ nor the court needed to rely on the treating physician's opinion that the plaintiff was completely disabled: "As an initial matter, 'the ALJ--not treating or examining physicians or State agency consultants--must make the ultimate disability and RFC determinations." 551 F. App'x at 46 n.7 (quoting *Chandler v. Comm'r of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); citing 20

39

C.F.R. § 404.1527(d)). Although it is true that an ALJ's credibility judgments alone cannot override a treating physician's medical opinion that is supported by the evidence, *Morales v. Apfel*, 225 F.3d 310, 310 (3d Cir. 2003), where an ALJ relies "upon more than personal observations and credibility determinations in discounting the treating physician's finding of disability," the ALJ does not run afoul of relevant law. *Drejka v. Comm'r of Soc. Sec.*, 61 F. App'x 778, 782 (3d Cir. 2003) (not precedential) (distinguishing *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000) (holding that an ALJ's credibility judgments alone cannot override a treating physician's medical opinion that is supported by the evidence)).

As set out previously, in a letter dated March 20, 2014, sent to Plaintiff's attorney, Dr. Albright stated that "Sandy has been under my care for chronic back pain and has been unable to work. Sandy has now developed bilateral carpal tunnel syndrome, verified by an EMG. Sandy is unable to perform sedentary work due to her medical conditions and is unable to use her hands for any length of time." (R. 388.) In addition to this letter, on October 1, 2012, Dr. Albright expressed in the DPW form opinion that Plaintiff was totally disabled beginning in 2010 (R. 261, 355), and on May 17, 2012, Dr. Albright noted "unable to work because of back" in the "Assessment/Plan" portion of his office notes (R. 231).

ALJ Cutter cited these three opinions and found that

> [a]lthough Dr. Albright is a treating
> practitioner, his opinions are not supported
> by his examination findings or the
> conservative treatment provided to the
> claimant.  In fact, progress notes from Dr.
> Albright show only that the claimant had
> lumbar spine tenderness (Exhibit B1F), and
> lack any musculoskeletal examination findings
> in support of his conclusion that this
> condition results in an inability to work.
> The claimant's hypertension is well
> controlled on medication.  Therefore, because
> the opinions of Dr. Albright are poorly
> supported by the record and are clearly
> overstated based on the treatment provided by
> Dr. Albright and his examination findings, or
> lack thereof, these opinions are given
> limited weight.  Dr. Albright issued an
> opinion of disability and that the claimant
> has a complete inability to use her hands
> (Exhibit B16F).  However, the claimant's
> inability to use her hands is not medically
> documented and is inconsistent with the
> claimant's daily activities.  Moreover, Dr.
> Albright did not support his opinions of
> disability and inability to work with an
> assessment of specific functional
> limitations.  Therefore, this opinion is
> accorded limited weight.

(R. 44.)

In support of her assertion that ALJ Cutter erroneously determined that Dr. Albright's March 20, 2014, opinion was not supported by the record, Plaintiff cites Dr. Albright's May 17, 2012, office visit notation (Doc. 11 at 11 (citing R. 231)), her January 14, 2013, lumbar spine x-rays which showed degenerative changes at L4-L5 and L5-S1 levels (*id.* (citing R. 323)), Dr. Albright's treatment of Plaintiff which necessitated Vicodin and two shots in her back, the necessity for hand and elbow surgeries

41

(*id.* (citing R. 60, 393)), and Plaintiff's testimony about her pain (*id.*).

The scant evidence to which Plaintiff directs the Court's attention does not provide the suggested support for the March 20, 2014, opinion or show that ALJ Cutter's determination that Dr. Albright's opinions were entitled to limited weight is not supported by substantial evidence.  (R. 44.)  First, Dr. Albright's May 17, 2012, office visit note is an isolated notation not accompanied by evidence indicating any functional limitation: his examination indicated only that the "lumbar spine has tenderness." (R. 231.)  Second, the lumbar spine x-rays showed "mild to moderate" disc space narrowing at the affected areas with no evidence of acute fracture or subluxation, no loss of vertebral body height, facet joints and SI joints normal, no evidence of spondylolisthesis or spondylolysis, and pedicles intact.  (R. 323.) Without more, these findings do not provide objective support for functional limitations related to a condition which would prevent Plaintiff from engaging in all substantial gainful activity. Third, the facts that Plaintiff was prescribed Vicodin and received two shots in her back at some time (R. 60) support allegations of some pain but do not refute the deficit of objective examination findings by Dr. Albright in the record discussed by ALJ Cutter. Fourth, the necessity of hand and elbow surgery (R. 393) supports Dr. Albright's March 20, 2014, assertion that Plaintiff had

developed bilateral carpal tunnel syndrome, but the need for surgery intended to alleviate symptoms does not amount to an assessment of functional limitations which ALJ Cutter found lacking.  (R. 44.)  Finally, Plaintiff's subjective allegations of pain do not show that ALJ Cutter's assessment was error in that he found Plaintiff not entirely credible concerning the intensity, persistence, and limiting effects of her symptoms, a finding adequately discussed and supported in his Decision.  (R. 43-44.)

In sum, Plaintiff has not shown the ALJ erred in his assessment of Dr. Albright's opinions because she has not shown that they were adequately supported by objective evidence of record.  As set out above, an opinion is only entitled to controlling weight when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight."  20 C.F.R. § 404.1527(c)(2). Further, ALJ Cutter gave good reasons for the weight he accorded the opinions, and Plaintiff has not shown he ran afoul of any relevant regulation in making his determination that Dr. Albright's opinions were entitled to limited weight.  Therefore, Plaintiff has not shown that this claimed error is cause for reversal or remand.

**3.** __Consulting Examiner's Opinions__

Plaintiff's main criticism of ALJ Cutter's consideration of Dr. Daecher's opinions is that ALJ Cutter did not credit Dr.

Daecher's November 2012 finding that Plaintiff could sit for eight hours alternating sit/stand at her option.  (Doc. 11 at 13 (citing R. 271).)  Defendant maintains the ALJ's assessment of Dr. Daecher's opinions was not improper.  (Doc. 13 at 14-16.)  I conclude Plaintiff has not shown that this claimed error is cause for reversal or remand.

First, this criticism ignores the ALJ's initial basis for concluding Plaintiff did not require the sit/stand option noted by Dr. Daecher in her November 2012 opinion: he stated that the at will sit/stand option was not supported by the medical findings or treatment history.  (R. 45.)  Plaintiff acknowledges that Dr. Daecher did not indicate the need for a sit/stand option in her March 2013 opinion and attributes this change to the difference in the form used in March 2013--it did not have the alternating position option Dr. Daecher had checked in the November 2012 form.[3] (Doc. 11 at 13 (citing R. 271, 337).)  With this assertion Plaintiff infers that Dr. Daecher erred in opining that Plaintiff could sit for a total of eight hours in an eight-hour day.  (See R. 337.)  Because ALJ Cutter cited specific reasons for discounting

---

[3]  The November 2012 form had three options in the sitting capacity category: "sit less than 6 hours"; "sit 6 hours"; "8 hours with alternating sit/stand at his/her option."  (R. 271.)  "No Limitation" was an overall option.  (Id.)  The capacity to sit for 8 hours indicated in March 2013 was not an option in the November form.  (R. 271, 337.)  While the March finding may be more consistent with the "No Limitation" option offered on the November form, such speculation is unwarranted for the reasons identified in the text.

44

the sit/stand aspect of the November 2012 opinion independent of the weight he attributed to the March 2013 opinion (R. 45), the Court need not infer error on the part of the examining consultant. Importantly, Plaintiff does not point to medical findings or treatment history supportive of the need for a sit/stand option. Because Plaintiff has not shown the ALJ erred in his assessment of Dr. Daecher's opinions, this claimed error is not cause for reversal or remand.

## D.    *Step Five Determination*

Plaintiff asserts ALJ Cutter erroneously concluded that Plaintiff could perform work inconsistent with her RFC. (Doc. 11 at 3-4.) Defendant maintains that this argument lacks merit and the ALJ met his burden at step five. (Doc. 13 at 18-25.)  I conclude Plaintiff has not shown that this claimed error is cause for reversal or remand.

Considering the jobs of conveyor line bakery worker, potato chip sorter, and stuffer, Plaintiff first argues that the stuffer position would require constant use of the hands which is inconsistent with the RFC stating that Plaintiff needs to avoid constant use of her hands. (Doc. 11 at 3.) Assuming this to be true, the inconsistency is not fatal if it does not exist as to all of the jobs identified by the VE. *Rutherford*, 399 F.3d at 557. Thus, in order to support error requiring reversal or remand, Plaintiff must show that all exemplary positions are inconsistent

45

with the RFC.

Plaintiff next points to the VE's testimony that all three positions would involve standing and walking for the vast majority, seven out of eight hours, of the day. (Doc. 11 at 3-4.) This assertion does not point to error because both the RFC assessment and VE hypothetical provided for the ability to stand up to five hours per day and walk up to four hours (R. 42, 70) which equals a combined total of standing *and* walking for nine hours. Thus, it is not inconsistent for the VE to conclude that Plaintiff could perform positions requiring an ability to stand *and* walk for seven hours. (*See* R. 72-73.) Further, as noted by Defendant, a designation of light work does not mean one must stand or walk for the entire day. (Doc. 13 at 20-21.)

Finally, Plaintiff contends that she could not perform the bakery worker and potato chip sorter positions because they could involve temperature extremes. (Doc. 11 at 4.) When asked by Plaintiff's attorney about temperature extremes in these positions, the VE responded that inside temperatures in the food industry "are pretty well controlled." (R. 73.) When further queried, the VE agreed that it would be warm "if you're near where they're cooking the *product*." (*Id.*) This testimony does not show that these positions could involve temperature *extremes* at all--the VE merely affirmed Plaintiff's attorney's assertion that it would be *warm* near where a product was being cooked. (R. 73.) Thus, nothing

about these positions is inconsistent with the RFC's limitation to occasional exposure to temperature extremes.  (R. 42.)  Because Plaintiff has not shown that all exemplary positions are inconsistent with her RFC, she has not shown that the Claimed step five error is cause for reversal or remand.

### V. Conclusion

For the reasons discussed above, the Court concludes Plaintiff's appeal of the Acting Commissioner's decision is properly denied.  An appropriate Order is filed simultaneously with this Memorandum.

RICHARD P. CONABOY
United States District Judge

DATED: _July 1, 2016_

47